**In re SYSTEMS FOR SOLAR CONTROL, Debtor.**

**SYSTEMS FOR SOLAR CONTROL, Plaintiff,**

v.

**Marvin FEIG, Defendant.**

**Bankruptcy No. 79 B 4150.**

United States Bankruptcy Court, N. D. Illinois, E. D.

July 24, 1981.

Paul A. Gold, Chicago, Ill., for defendant.

J. Barton Kalish & Assoc., Chicago, Ill., for debtor.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This matter came to be heard on the motion of defendant, Marvin Feig, for a summary judgment pursuant to Federal Rules of Civil Procedure, Rule 56. Debtor, Systems for Solar Control, Inc., (Systems), filed an adversary complaint seeking a judgment of $75,000 plus fees and costs. Feig answered said complaint and also moved for a summary judgment alleging the absence of any genuine issue of material fact. Having carefully considered all the briefs, pleadings and memoranda filed by the parties, and being fully advised in the premises, the court hereby makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Debtor herein is an Illinois corporation known as "Systems for Solar Control" (Systems). Defendant, Marvin Feig, was President of Systems on September 26, 1978. Paul Richmond was Secretary of Systems on September 26, 1978. On that date Feig, as 'seller' and Richmond as 'purchaser', entered into a written "Agreement for the Purchase of Capitol Stock." The Agreement recites that:

> This Agreement, dated September 26, 1978, by and between Paul Richmond (hereinafter referred to as (Purchaser), and Marvin Feig (hereinafter referred to as Seller), and Systems for Solar Control, Inc. and Environmental Manufacturing, Inc., both Illinois corporations (collectively referred to as "The Corporations")...
>
> \* \* \* \* \* \*
>
> Whereas Seller owns and desires to sell to Purchaser, all of the issued and outstanding capitol stock of the Corporations owned by Seller, and Purchaser ... will purchase the shares from the Seller...

Systems' instant complaint is based upon the written agreement between Feig and Richmond. Systems contends that Richmond acted as its nominee in the transaction. Systems then contends that the transaction can be avoided as a fraudulent transaction pursuant to § 67(d) of the Bankruptcy Act of 1898. Formerly 11 U.S.C. § 107(d). The agreement was signed "Marvin Feig-Seller" and "Paul Richmond-Purchaser."

## DISCUSSION

Summary Judgment for the defendant will be granted if it is shown that "there is no genuine issue as to any material fact." *Federal Rules of Civil Procedure*, 56(c). Defendant argues that the agreement clearly and unambiguously proves that Richmond was the purchaser of the stock. Since the agreement is clear and unambiguous, defendant contends Systems cannot vary the terms of the agreement by extrinsic evidence. Systems argues that the court must resolve the issues of whether or not Richmond was its nominee through the admission of extrinsic evidence. Systems points out that although Feig and Richmond signed the agreement as Seller and Purchaser respectively, they also signed the agreement in their capacities as officers of the two corporations involved.

Based on the clear language of the written agreement the court holds that Richmond was not the nominee of Systems during the disputed transactions. The agreement continually refers to Richmond as the Purchaser. Nowhere in the agreement are the words "nominee", "agent" or "principal" used. This court endorses the general rule that:

> as between parties to an instrument, extrinsic evidence is inadmissible to vary, alter or contradict a written instrument which is complete, unambiguous, valid and unaffected by fraud, duress, mistake or illegality. (Cites omitted).
>
> \* \* \* \* \* \*
>
> The intention of the parties must be ascertained ... from language employed in the contract itself.

*World Insurance Company v. Smith*, 28 Ill. App.3d 1022, 329 N.E.2d 518 (1975). Under Illinois statutory law,

> an authorized representative who signs his own name to an instrument is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity.

S.H.A., ch. 26, § 3–403(2). Based on the above statute and the clear language of the agreement, the court finds that Richmond signed as purchaser in his individual capacity, he became personally obligated under that agreement, and he was not System's nominee.

The written agreement between Feig and Richmond stated that:

> The purchase price for the shares of the Corporations being purchased by Purchaser from Seller shall be the sum of $75,000 plus the elimination of any debt that Seller may owe the Corporations presently on the books...

The Corporations shall transfer to Seller three life insurance policies ... and Seller shall give to Purchaser credit on the purchase price, the amount of cash surrender value of the same policies... The Corporations shall transfer to Seller, if such transfer is allowed by the insurance company, the Aetna Life Insurance Company disability policy, number PXP17075, owned by the Corporations and the Seller shall give to Purchaser credit on the purchase price, the amount, if any, of the cash surrender value that exists....

WHEREFORE, it appearing that the Corporations may have furnished Richmond with some of the consideration for the sale of stock, the court will grant the defendant partial summary judgment. The parties shall contact the clerk to arrange a hearing limited to the issue of the actual monetary consideration the corporations supplied to Feig via Richmond. Systems will thereby have the opportunity to prove how much the insurance policies were worth, the amount of debt Feig owed the Corporations and the amount of credit towards the purchase price that was allowed Richmond. The court must stress that the *only issue* at the anticipated hearing will be the amount of consideration that Systems supplied to Feig through Richmond by transferring life and disability insurance policies and by erasing Feig's debts from the corporate books. Assuming that Systems proves the corporations furnished a meaningful portion of the consideration to Feig, Systems will then have to prove, at a later hearing, that the transaction was fraudulent within the meaning of the Act.